UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| BROWN MEDICAL CENTER, INC., | § | CASE NO. 13-36405 |
| | § | |
| Debtor. | § | Chapter 11 |
| ELIZABETH M. GUFFY, | § | |
| PLAN AGENT, | § | |
| Plaintiff. | § | |
| | § | Adv. No. 15-_____ |
| vs. | § | |
| | § | |
| BRENNER EQUITIES GROUP INC. | § | |
| D/B/A BRENNER REAL ESTATE | § | |
| GROUP | § | |
| Defendant. | § | |

## PLAN AGENT'S ORIGINAL COMPLAINT

Elizabeth M. Guffy, the Plan Agent (the "Plan Agent") under the confirmed chapter 11 plan of liquidation (the "Plan") of Brown Medical Center, Inc. ("BMC" or "Debtor"), files this Complaint against Brenner Equities Group, Inc. d/b/a Brenner Real Estate Group ("Defendant").

### PARTIES

1.  The Plan Agent may be served in this adversary proceeding through her counsel.

2.  Brenner Equities Group, Inc. d/b/a Brenner Real Estate Group is a corporation in the State of Florida that may be served by first class mail through its registered agent for service of process, Scott Brenner, 1500 W. Cypress Creek Rd., Ste. 409, Fort Lauderdale, Florida 33309 pursuant to Federal Rule of Bankruptcy Procedure 7004(b)(3).

### JURISDICTION AND VENUE

3.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Relief is sought pursuant to 11 U.S.C. §§ 544, 548, 550 and other applicable law.

5122386v1

4.	This adversary is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (H) and (O).  The Plan Agent consents to the entry of final orders or judgment by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

5.	Jurisdiction is established through Bankruptcy Rule of Civil Procedure 7004(f).  Defendant has continuous and systematic contacts with the State of Texas and/or has engaged in specific acts which constitute doing business in the State of Texas, including but not limited to, receiving the fraudulent transfers made the subject of this Complaint which originated in Texas.

6.	Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

### SUMMARY OF THE PLAN AGENT'S COMPLAINT

7.	Pursuant to 11 U.S.C. §§ 544, 548 and 550 and applicable state law, the Plan Agent seeks to avoid and recover certain payments made to the Defendant by BMC related to rent for a separate entity owned and/or controlled by Michael Brown.  Further, the Plan Agent seeks to recover her attorneys' fees, costs and interest in accordance with applicable law.

### STATEMENT OF RELEVANT FACTS

*Florida Rental Property*

8.	On January 29, 2013, BMC paid the Defendant rent for a Florida leased space for ProMed, LLC ("ProMed") or another entity not affiliated with BMC (the "Florida Leased Space").  ProMed is an entity that was created by Michael Brown for the explicit purpose of defrauding his and BMC's creditors, including his then wife, Rachel Brown.  Michael Brown used BMC assets, such as the payment to Defendant identified below, to fund the creation and start-up costs of ProMed.  Despite paying for all of these costs, BMC has no ownership interest in ProMed, which was entirely owned by Michael Brown or entities wholly owned by Michael

2

Brown. BMC was also never a lessee or occupant of the Florida Leased Space and received no benefit from the Florida Leased Space.

*BMC's Insolvency*

9. During 2010, BMC faced litigation from several employees and affiliated physicians, alleging breach of contract and fraud, among other actions. In February 2010, Dr. Kevin J. Renfree, M.D. filed suit against BMC as a *qui tam* action under the False Claims Act ("FCA"). In his suit, Dr. Renfree alleged BMC submitted or caused the submission of false or fraudulent claims to the Medicare Program, the Texas Medicaid Program, and the Arizona Medicaid Program for medical procedures it did not perform and by overbilling the government for procedures it did perform. Eventually, the United States government intervened in the matter. The FCA provides for the recovery by the United States government of reimbursements paid for services improperly billed, treble damages, and mandatory fines and penalties in the amount of $5,500 and $11,000 per claim. The *qui tam* lawsuit alleged as many as 8,562 instances of false billing. As such, the *qui tam* claims constituted a significant liability of BMC as early as 2010.

10. Additionally, on January 7, 2011, Rachael Brown filed divorce proceedings against Michael Brown. The divorce involved protracted, expensive litigation. The divorce had a profound impact on BMC's financial condition because Rachel Brown's attorneys' fees—amounting to millions of dollars—were paid by BMC. These non-operational cash expenditures, coupled with BMC's continued funding of Michael Brown's criminal defense costs, eroded BMC's cash position, resulted in BMC incurring unnecessary debt obligations and crippled the company's liquidity and access to necessary capital.

11. By March 2011, BMC was suffering from "a substantial decline in business" and faced significant liabilities resulting from (i) pending litigation; (ii) guarantees of significant

3

affiliate obligations; and (iii) claims asserted by certain affiliates related to funding BMC's working capital shortfalls. The litigation initiated by BMC employees and affiliated physicians represented additional risks to the future operational stability of the entity, further impairing its value.

12. These mounting liabilities and non-operational expenses, along with the substantial decline in business, resulted in (i) BMC's liabilities exceeding the fair value of its assets no later than March 2011; and (ii) BMC knowingly engaging in continued business operations with woefully insufficient capital and incurring legitimate debts beyond its ability to pay as early as March 2011 (the "Insolvency Date").

*The Transfers*

13. After the Insolvency Date, BMC made at least the following transfers of the Debtor's property to or for the benefit of Defendant:

| Date | Check No. | Transaction Amount |
|---|---|---|
| 1/29/2013 | 31682 | $ 44,851 |

14. The transfer in paragraph 13, as well as any other transfers from BMC to or for the benefit of Defendant (as the initial transferee, the beneficiary and/or the immediate of mediate transferee), are collectively referred to as the "Transfers."

15. BMC had no independent legal obligation to make the Transfers and the Transfers did not benefit BMC.

*The Bankruptcy Cases*

16. On January 23, 2013, Michael Brown filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the

4

Southern District of Florida (Case No. 13-11484-RAM). That case was later transferred to the United States Bankruptcy Court for the Southern District of Texas (Case No. 13-35892).

17. On October 15, 2013 (the "Petition Date"), Ronald Sommers, chapter 11 trustee for Michael Brown, filed a voluntary petition for relief on behalf of BMC under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of Texas (Case No. 13-36405). On October 24, 2013, the bankruptcy court entered an order appointing Elizabeth M. Guffy as chapter 11 trustee of BMC.

18. On October 1, 2014, this Court confirmed a plan of liquidation in this case pursuant to which Ms. Guffy was appointed as the Plan Agent.

## CLAIMS

### Fraudulent Transfers Under 11 U.S.C. § 548

19. The Plan Agent incorporates the allegations above.

20. The Transfers and any agreement by the Debtor to make and/or allow such Transfers within two years of the Petition Date (collectively, the "Two-Year Transfers"), are avoidable as fraudulent transfers under 11 U.S.C. § 548. The Two-Year Transfers were made with actual intent to hinder, delay, or defraud creditors of BMC.

21. Additionally, the Debtor received less than reasonably equivalent value for the Two-Year Transfers because Defendant provided no services for the benefit of BMC, and any value provided by Defendant was specifically for the benefit of ProMed or another entity not affiliated with BMC. Moreover, BMC had no legal obligation to make the Two-Year Transfers. Finally, on the date of the Two-Year Transfers, the Debtor (i) was insolvent, or became insolvent as a result of the Two-Year Transfers; (ii) was engaged or was about to engage in business in

5

which its property after the Two-Year Transfers was unreasonably small capital; and/or (iii) intended to incur or believed it would incur debts that it would be unable to repay.

22. Under 11 U.S.C. § 550(a), the Plan Agent can recover the payments or the value of the payments from "the initial transferee of such transfer or the entity for whose benefit such transfer was made" or "any immediate or mediate transferee of such initial transfer." Defendant was the initial transferee, the beneficiary and/or the immediate or mediate transferee of the Two-Year Transfers.

23. The Plan Agent requests that the Court enter a judgment avoiding the Two-Year Transfers and awarding the Plan Agent a money judgment in the amount of the Two-Year Transfers, plus pre- and post-judgment interest.

### Fraudulent Transfers Under Texas Law

24. The Plan Agent incorporates the allegations above.

25. The Transfers and any agreement by the Debtor to make and/or allow such transfers within four years of the Petition Date (the "Four-Year Transfers") were made in violation of Chapter 24 of the Texas Business and Commerce Code. TEX. BUS. & COM. CODE § 24.010. The Four-Year Transfers were made with actual intent to hinder, delay, or defraud creditors of BMC. TEX. BUS. & COM. CODE § 24.005(a)(1).

26. Additionally, the Four-Year Transfers were made without the Debtor receiving reasonably equivalent value in exchange for the Four-Year Transfers and the Debtor was insolvent at the time of the Four-Year Transfers or the Debtor became insolvent as a result of the Four-Year Transfers. Defendant provided no services for the benefit of BMC, and any value provided by Defendant was specifically for the benefit of ProMed or another entity not affiliated with BMC. Moreover, BMC had no legal obligation to make the Four-Year Transfers. A

creditor exists whose claim arose before the occurrence of the Four-Year Transfers for whom the Plan Agent can act. TEX. BUS. & COM. CODE § 24.006(a).

27. The Four-Year Transfers were made for less than reasonably equivalent consideration and the Debtor (i) was engaged in business for which the remaining assets were unreasonably small in relation to the Debtor's business; or (ii) reasonably should have known that the Debtor was incurring debts beyond its ability to repay them. TEX. BUS. & COM. CODE § 24.005(a)(2). A creditor exists whose claim arose before or within a reasonable time after the occurrence of the Four-Year Transfers for whom the Plan Agent can act. TEX. BUS. & COM. CODE § 24.005.

28. The Plan Agent seeks money damages against Defendant pursuant to TEX. BUS. & COM. CODE § 24.008.

29. Defendant was the initial transferee, immediate transferee or mediate transferee of all of the Four-Year Transfers.

**Fraudulent Transfers Under Florida Law**

30. The Plan Agent incorporates the allegations above.

31. In the alterative, to the extent the Court determines that Florida state law—as opposed to Texas state law—applies to avoidance and recovery of the Transfers, the Transfers to the Defendant were avoidable as fraudulent transfers under FLA. STAT. § 726.101, *et seq.* (the "Florida Uniform Fraudulent Transfer Act"), which the Plan Agent incorporates pursuant to 11 U.S.C. § 544(b)(1).

32. The Transfers and any agreement by the Debtor to make and/or allow such Transfers within four years of the Petition Date (the "Four-Year Transfers") were made in violation of the Florida Uniform Fraudulent Transfer Act. FLA. STAT. § 726.110. The Four-Year

7

Transfers were made with actual intent to hinder, delay, or defraud creditors of BMC. FLA. STAT. § 726.105(1)(a).

33. Additionally, the Four-Year Transfers were made without the Debtor receiving reasonably equivalent value in exchange for the Four-Year Transfers and the Debtor was insolvent at the time of the Four-Year Transfers or the Debtor became insolvent as a result of the Four-Year Transfers. Defendant provided no services for the benefit of BMC, and any value provided by Defendant was specifically for the benefit of ProMed or another entity not affiliated with BMC. Moreover, BMC had no legal obligation to make the Four-Year Transfers. A creditor exists whose claim arose before the occurrence of the Four-Year Transfers for whom the Plan Agent can act. FLA. STAT. § 726.106(1).

34. The Four-Year Transfers were made for less than reasonably equivalent consideration and the Debtor (i) was engaged in business for which the remaining assets were unreasonably small in relation to the Debtor's business; or (ii) reasonably should have known that the Debtor was incurring debts beyond its ability to repay them. FLA. STAT. § 726.105(1)(b). A creditor exists whose claim arose before or within a reasonable time after the occurrence of the Four-Year Transfers for whom the Plan Agent can act. FLA. STAT. § 726.105.

35. The Plan Agent seeks money damages against Defendant pursuant to FLA. STAT. § 726.108.

36. Defendant was the initial transferee, immediate transferee or mediate transferee of all of the Four-Year Transfers.

## ATTORNEY'S FEES

37. The Plan Agent requests an award of her reasonable fees and costs pursuant to the TEX. BUS. & COM. CODE § 24.013 and any additional applicable law.

## PRE- AND POST-JUDGMENT INTEREST

38. The Plan Agent seeks pre-judgment interest on the value of the Transfers through the date of judgment. The Plan Agent seeks post-judgment interest on all money damages awarded hereunder from the date of judgment until paid at the prevailing federal judgment rate.

## PRAYER

Accordingly, the Plan Agent requests the Court enter judgment as set forth above and grant such other relief as is just.

**Dated: October 13, 2015.**

Respectfully submitted,

**Porter Hedges LLP**

By:   /s/ Joshua W. Wolfshohl
Joshua W. Wolfshohl
State Bar No. 24038592
Amy K. Wolfshohl
State Bar No. 24055880
Stephanie L. Holcombe
State Bar No. 24069939
1000 Main Street, 36th Floor
Houston, Texas 77002
(713) 226-6000
(713) 228-1331 (fax)
jwolfshohl@porterhedges.com

**Counsel for the Plan Agent**